**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR09-0712 PHX-DGC |
| Plaintiff, | **ORDER** |
| vs. | |
| Daniel Mahon (2), | |
| Defendant. | |

On August 12, 2011, the Court entered an order requiring the government to identify certain tangible objects in its possession related to the surveillance operation in Catoosa, Oklahoma in early 2005. Doc. 1130. The government has responded (Doc. 1140), Defendant Daniel Mahon has filed a reply (Doc. 1157), and Defendant Dennis Mahon has joined the reply (Doc. 1159). For reasons explained below, the Court will schedule an *ex parte* hearing at which the government may present evidence to support its claim that certain tangible items are law-enforcement sensitive. The Court will then decide whether the items are entitled to a qualified law enforcement privilege.

**I.    Background.**

In late 2004 and early 2005, the government conducted an undercover operation at a trailer park in Catoosa where Defendant Daniel Mahon and his brother Dennis were living. Doc. 1045 at 1-2. The government furnished a trailer with surveillance and recording equipment, transported the trailer to the trailer park (*id.*), and assigned a confidential informant to live in the trailer and befriend Defendants (Doc. 1072 at 2). Government agents equipped a second trailer and a nearby hotel room with devices to monitor transmissions from inside the informant's trailer. *Id.*

The government asserts that the recording equipment failed on January 29, 2005, and that the monitoring agents took contemporaneous notes of a conversation that occurred during the lapse in recording. Doc. 1045 at 2. The notes state that Daniel Mahon "made numerous statements about a statute of limitations, drive by shootings, using phosphorous in a condom to make an explosive, to name a few." *Id.* at 2-3. These are critical allegations in the case, and Daniel Mahon seeks to compel disclosure of the surveillance equipment and related tangible items to test the veracity of the government's assertion that agents were able to hear and record the conversation.

The Court's order of August 12, 2011, concluded that Daniel Mahon had satisfied the requirements under Rule 16(a)(1)(E)(i) for disclosure of tangible items related to the surveillance operation. Doc. 1130. The Court concluded that allowing the defense team to examine the actual equipment used in the surveillance would shed light on whether the equipment was capable of providing the clarity claimed by the agents. *Id.*

**II.    The Government's Response.**

As ordered, the government produced a memorandum describing equipment used in the surveillance operation. Doc. 1140. The equipment falls into three categories.

**A.    Video Recording Equipment.**

Video recording was accomplished in the informant's trailer with hardwired microphones, a pre-amplifier, cameras, and a VCR. The government states that the VCR was either a Panasonic AG-1070DC or RT-600, which are identical except for the level of power they require.

The government asserts that the microphones and pre-amplifier are law-enforcement sensitive and not available for sale to the general public. The government asserts that the size and appearance of the microphone and the size of the pre-amplifier are also law-enforcement sensitive, and that familiarity with the size and shape of these items could assist individuals in defeating law enforcement surveillance.

The exterior of the informant's trailer was recorded by a Pelco color camera and a Computar 5-50mm variable lens. The interior was recorded by a Computar lens and a

Genwac G color camera, model GW-231S. The government states that the camera feed was spliced so that the camera transmission went both to the VCR within the trailer and to the wireless surveillance equipment described below.

### B. Wireless Surveillance Equipment.

The informant's trailer was also wired with equipment connected to a wireless transmitter. Signals from the transmitter were sent to agents in a nearby trailer and hotel and captured the statements made by Daniel Mahon on January 29, 2005. The equipment included a wireless transmitter with an "electret" microphone to capture and broadcast an audio signal to the nearby trailer and hotel room. These transmissions were not recorded.

The government asserts that the transmitter remains law-enforcement sensitive because it broadcasts at proprietary frequencies allocated to the ATF within certain bands of usage not available to the general public. ATF contends that disclosure of the make, model, and specifics of the wireless transmitter would enable individuals to defeat government electronic operations. The size of the transmitter is also sensitive, the government asserts, because individuals could refine their searches for this item if they knew its size. The transmitter uses an antenna which is also claimed to be law-enforcement sensitive because its size and description would enable individuals to locate it during undercover surveillance operations.

Signals sent by the wireless transmitter were received on wireless receivers by law enforcement agents. The government asserts that the bands on which the receivers operate are the same as those used by the transmitter, and are law-enforcement sensitive. The size of the receiver and its description are not law-enforcement sensitive.

The government further states that agents used a generic television with generic television speakers to listen to the wireless transmissions. The wireless receiver was connected to the television with standard cables. In addition, because the video cameras in the trailer were spliced to provide signals to the wireless receivers, agents received video images in the trailer and hotel room from the same camera used for the VCR recordings.

## C. Confidential Informant Trailer.

The trailer used by the informant remains in existence. (The government does not have possession of the trailer used by agents, and does not know if it exists.) Except for the hardwired microphones, equipment from the Catoosa operation has been removed from the trailer and replaced. The government asserts that inspection of the trailer would reveal law-enforcement sensitive information such as the placement of the cameras and microphone. The government explains that law enforcement agents have learned to conceal this equipment effectively, and that inspection of the trailer would reveal their techniques for hiding cameras, microphones, and wireless equipment.

## D. Equipment Summary.

From the government's description, it appears that only the second and third categories of equipment are relevant to Defendant's motion. The motion focuses on the unrecorded conversation Daniel Mahon allegedly had with the confidential informant on January 29, 2005. The VCR, cameras, and VCR-related microphones were not used to transmit this communication. Thus, the first category of tangible objects is not relevant to Daniel Mahon's arguments regarding the agents' ability to hear the January 29, 2005 conversation.

The second category of equipment clearly is relevant because it includes the microphones, transmitters, and receivers by which the agents allegedly heard Daniel Mahon's statements to the informant. The third category – the trailer – is also relevant. The government's description makes clear that the wireless microphones in the trailer were separate from the microphones that fed to the VCR. Thus, the location of the wireless microphones could bear on Daniel Mahon's argument that agents were not able clearly to hear his statements to the confidential informant.

## III. Daniel Mahon's Response.

Daniel Mahon's response includes a number of different arguments. Doc. 1157. The Court will discuss them separately.

**A,     Lost Information.**

Daniel Mahon complains that the government failed to create or preserve various categories of information related to the Catoosa operation. He notes that no photographs were taken of the Catoosa trailer park, no measurements or contemporaneous diagrams of the trailers and hotel were created or maintained, no documents reflecting the location of the equipment exist, there is no document that preserves the specifics and configuration of the electronic equipment, and operation manuals related to the equipment no longer exist. Daniel Mahon suggests that he intends to file a motion related to this lost evidence, but does not otherwise provide a basis for the Court to grant any relief at this point.

**B.     Government's Obligation to Disclose Unrecorded Information.**

Daniel Mahon's discovery request, and some of the arguments made in his response, seem to suggest that the government has an obligation to compile and disclose the information he seeks, even if it is not located in a document or tangible thing in the government's possession. For example, Daniel complains that the government has not disclosed the location of the equipment or where the camera feed was spliced. Doc. 1157 at 3. Daniel requests an evidentiary hearing, apparently for the purpose of conducting discovery. He suggests that the Court should require the government to present the "Senior Technical Operations Officer who installed the equipment" for examination and cross-examination, asserting that "[o]nly then can the defense adequately explore . . . what equipment in fact existed and how it was used." *Id*. at 4.

Rule 16(a)(1)(E) requires the government to disclose documents or other tangible objects within its possession, custody, or control. The rule does not require the government to create documents that might provide information a defendant desires to obtain, nor does it require the government to present agents or witnesses for interviews or in-court examination. The rule "triggers the government's disclosure obligation only with respect to documents within the federal government's actual possession, custody, or control." *United States v. Gatto*, 763 F.2d 1040, 1048 (9th Cir. 1985). Cases generally have recognized that Rule 16(a)(1)(E) does not impose on the government an obligation

to disclose information not contained within a document or other tangible item within its possession. *See, e.g., United States v. Amaya-Manzanares*, 377 F.3d 39, 42-43 (1st Cir. 2004) ("Rule 16(a)(1)(E) did not apply to the document until it was created"); *United States v. Kahl*, 583 F.2d 1351, 1354 (5th Cir. 1978) (upholding district court's refusal to grant discovery of government statistical compilations when such compilations did not exist); *United States v. Shambari*, 484 F.2d 931, 935 (4th Cir. 1973) ("the government cannot disclose what it does not have[.]"); *c.f. United States v. Harper*, 432 F.2d 100, 102 (5th Cir. 1970) (holding that "failure to produce non-required records when they do not exist" is not a violation of the Jencks Act).

As another district court has explained:

> These document demands sound more like civil interrogatories under civil Rule 33 than document requests under criminal Rule 16(a)(1)(E). However, Rule 16(a)(1)(E) by its terms is directed to materials that the government actually possesses and does not apply to the document until it is created. The Court is unaware of any authority that would require the Government to manufacture a document in order to respond to a Rule 16(a)(1)(E) document request and, therefore, has interpreted the interrogatory-like demands as only asking for existing documents or existing tangible things.

*United States v. Cameron*, 672 F. Supp. 2d 133, 137 (D. Me. 2009) (quotation marks and citations omitted). Thus, to the extent Daniel Mahon asks the Court to require the government to compile and disclose information not found within documents and tangible things covered by Rule 16(a)(1)(E), the request is denied.[1]

### C. Defendant Challenges the Government's Qualified Privilege.

Daniel Mahon does contest the government's assertion that the second and third categories of information are covered by a qualified law enforcement privilege. He asserts that the equipment used in the trailer is likely outdated and therefore not law-

---

[1] Daniel Mahon does not argue that such information must be disclosed under *Brady* or other non-Rule 16 obligations. Moreover, during a hearing on July 29, 2011, Daniel Mahon's counsel essentially agreed that only documents and tangible things could be obtained under Rule 16(a)(1)(E). *See* Doc. 1194 at 30.

enforcement sensitive. He asserts that other items the government claims to be privileged are necessary for him to effectively cross-examine the agents who purportedly overheard his conversation with the informant on January 29, 2005. Daniel Mahon states that he does not need to know what transmission frequencies were used or where updated equipment is now located in the informant's trailer. Doc. 1157 at 4.

**IV. Analysis.**

As explained above, Defendant is not entitled to discover information in the government's possession that is not contained in a document or tangible thing covered by Rule 16(a)(1)(E), and the first category of tangible items described by the government are not relevant to Daniel's conversation on January 29, 2005 because the conversation was not recorded by the VCR equipment. The question the Court must answer, therefore, is whether Defendants are entitled to obtain access to the second and third categories of information described above – the wireless transmission equipment and the trailer.

The Supreme Court has recognized a qualified government privilege not to disclose sensitive investigative techniques. In *Rovario v. United States*, 353 U.S. 53 (1957), the Supreme Court held that the government has a privilege to withhold the identity of persons who provide information about crimes to the police, reasoning that the privilege furthers effective law enforcement by encouraging citizens to come forward with relevant information. *Id*. at 59. The Supreme Court also held, however, that the privilege must give way where the informant's identity or knowledge is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Id*. at 60-61.

Courts have applied the *Rovario* qualified privilege to the location and composition of electronic surveillance information:

> We hold that the privilege applies equally to the nature and location of electronic surveillance equipment. Disclosing the precise locations where surveillance devices are hidden or their precise specifications will educate criminals regarding how to protect themselves against police

surveillance. Electronic surveillance is an important tool of law enforcement, and its effectiveness should not be unnecessarily compromised. Disclosure of such information will also educate persons on how to employ such techniques themselves[.]

*United States v. Van Horn*, 789 F.2d 1492, 1508 (11th Cir. 1986); *see also United States v. Cintolo*, 818 F.2d 980, 1002 (1st Cir. 1987) (following *Van Horn*).

The second and third categories of information discussed above include several tangible items – the wireless transmitter located in the informant's trailer, the "electret" microphone used to capture sounds, the wireless receivers located in the agents' trailer and hotel room, and the informant's trailer itself. In order to determine whether these items qualify for a law enforcement privilege, the Court will hold an *ex parte* hearing on November 2, 2011, at 3:30 p.m.[2] The government should present evidence at the hearing to support its claim that disclosure of these tangible items would compromise sensitive law enforcement information. If the government makes such a showing, the Court will then (without participation by counsel for the government) engage in the balancing necessary to determine whether the items should nonetheless be disclosed to Defendants under a *Roviaro* analysis.

Other tangible items were also used as part of the wireless surveillance. These include a generic television set with generic television speakers, and standard cables that connected the wireless transmitter to the television. The government does not maintain that these are law-enforcement sensitive. If they still exist, they shall promptly be

---

[2] The Court concludes that an *ex parte* hearing is the proper setting in which to evaluate evidence of the government's claim of law-enforcement sensitivity. *See Global Relief Found., Inc. v. O'Neill*, 315 F.3d 748, 754 (7th Cir. 2002) ("*Ex parte* consideration is common in criminal cases where, say, the identity of informants otherwise might be revealed, *see Roviaro v. United States*[.]"); *United States v. Gonzalez*, 2009 WL 742309 *1 (C.D. Cal. 2009) (court conducted *ex parte* hearing to evaluate *Roviaro* privilege claim); *United States v. Salemme*, 978 F. Supp. 386, 389 n. 8 (D. Mass. 1997) (*ex parte* submission used to evaluate *Roviaro* privilege claim); *cf. United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998) ("Ex parte hearings are generally disfavored. In a case involving classified documents, however, *ex parte, in camera* hearings in which government counsel participates to the exclusion of defense counsel are part of the process that the district court may use in order to decide the relevancy of the information.") (citation omitted).

produced to Defendants. If they do not exist, the government shall file a statement confirming that they do not exist.

Dated this 20th day of October, 2011.

David G. Campbell
United States District Judge